UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/01/2021
```

-----------------------------------------------------------------------X

CHRISTOPHER JOHNSON,                              :
                                                 :
                          Plaintiff,             :
                                                 :                    20-cv-6763 (LJL)
              -v-                                :
                                                 :
KILOLO KIJAKAZI,                                :                    OPINION AND ORDER
ACTING COMMISSIONER OF SOCIAL SECURITY,         :
                                                 :
                          Defendant.            :
                                                 X
-----------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Christopher Johnson ("Plaintiff") moves, pursuant to Federal Rule of Civil

Procedure 12(c), for judgment on the pleadings.  Dkt. No. 11.  The Administrative Law Judge

("ALJ") found that Plaintiff was not disabled under the Social Security Administration's listings

and therefore denied Plaintiff's application for a period of disability and disability benefits.  Dkt.

No. 10 at 28.  Plaintiff submits that the ALJ committed errors of law in determining that none of

Plaintiff's conditions meet or medically equal a listing under 20 C.F.R. §§ 404.1520(d), 404.1525,

and 404.1526, which would establish he is per se disabled, and that his residual functional capacity

("RFC") would permit him to perform light work.  Dkt. No. 12 at 15–16.  Plaintiff asks that the

Court enter an order reversing the decision and issue an order either finding that Plaintiff is

disabled or remanding the matter to the ALJ.  Dkt. No. 12 at 32.

      Defendant Commissioner of Social Security ("Defendant" or "Commissioner"), cross-

moves for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  Dkt. No.

16.  Defendant argues that the ALJ's decision was based on substantial evidence and was free of

legal error.  Dkt. No. 17 at 9–22.  Defendant asks that the Court deny Plaintiff's motion for

judgment on the pleadings, grant Defendant's cross-motion, and affirm the Commissioner's decision. *Id.* at 25.

For the following reasons, Plaintiff's motion for judgment on the pleadings is granted, and Defendant's motion is denied, and the matter is remanded to the Commissioner.

## BACKGROUND

Christopher Johnson ("Plaintiff" or "Johnson") was born in 1970 and was 44 at the alleged onset date ("AOD") of his disability on March 22, 2015.  Dkt. No. 10 at 171.  He is a resident of Middletown, New York, and he has at least a high school education.  *Id.* at 27.

Prior to Plaintiff's AOD, he served as a Correction Captain with the New York City Department of Correction ("DOC").  Dkt. No. 10 at 26.  While serving in that capacity, on May 7, 2014, Plaintiff sustained a use-of-force injury to his left hand.  Dkt. No. 10-4 at 1.  Approximately one year later, on March 4, 2015, Plaintiff was in a motor-vehicle accident (hereinafter, the "2015 accident") and sustained injuries to his back and neck.  He was not able to return to work and was subsequently found disabled by the Medical Board of the DOC.  Dkt. No. 10-3 at 334.  Plaintiff alleges that he became disabled shortly after the 2015 accident, primarily due to the injuries he sustained in the accident as well as the exacerbation of his prior use-of-force injury.  ALJ Edward E. Evans found that Plaintiff "has not engaged in substantial gainful activity since March 22, 2015, the alleged onset date."  Dkt. No. 10 at 19.

## I.      Medical Background During Period of Alleged Disability

Plaintiff has a history of degenerative disc disease with radiculopathy status post cervical fusion, carpal tunnel syndrome post bilateral trigger thumb release, right hip bursitis, obesity, and diabetes mellitus with neuropathy.  Dkt. No. 10 at 19.  Plaintiff's medical records document a number of examinations and procedures he has undergone since the 2015 accident, which caused

significant instability in Plaintiff's cervical and lumbar spine.  Dkt. No. 10-3 at 165, 248.

On March 18, 2015, two weeks after the 2015 accident, Dr. Gabriel Dassa, an orthopedic surgeon, performed surgery on Plaintiff's left wrist and hand.  Dkt. No. 10-2 at 74.  Post-operation, Dr. Dassa diagnosed Plaintiff with various hand- and wrist-related injuries: a Triangular Fibrocartilage Complex tear, traumatic arthropathy of the wrist, De Quervain's tenosynovitis, and trigger finger.  *Id.*

Various Magnetic Resonance Imaging scans ("MRIs") conducted in May 2015 indicated protrusions in Plaintiff's cervical and lumbar spine.  *See, e.g.*, Dkt. No. 10-3 at 243–45.  In June 2015, Plaintiff was diagnosed with right hip bursitis.  Dkt. No. 10-4 at 47.  In July 2015, Plaintiff received an injection of anesthesia and a joint pain reliever to his right hip to address his limited range of motion and pain, but it was not helpful and Plaintiff continued to experience impaired functioning of his right hip and lower extremities, including weakness and pain.  *Id.* at 62–63; Dkt. No. 10-1 at 51.  Also in July 2015, Plaintiff underwent a neurological assessment due to his continued reports of back pain.  Dkt. No. 10-3 at 255–60.  The examining physician concluded that Plaintiff "has moderate 50% partial musculoskeletal disability secondary to back pain" due to his herniated disc.  *Id.* at 259–60.

In August 2015, Plaintiff went to the emergency room due to ongoing "intermittent moderate right sided flank pain" that "fe[lt] like a stabbing," which resulted in nausea, headache, and diarrhea.  Dkt. No. 10-3 at 171.  An August 2015 nerve-conduction test indicated right side cervical radiculopathy.  Dkt. No. 10-4 at 57.  By September 2015, Plaintiff had received three lumbar and cervical epidural injections, but he continued to experience numbness and pain of increasing severity in his extremities.  Dkt. No. 10-1 at 57.  In October 2015, Plaintiff reported neck pain radiating down his arms, and an examining physician found that he had not improved

with conservative care and recommended anterior cervical discectomy and fusion surgery ("ACDF").  Dkt. No. 10-3 at 297–99.  In November 2015, Plaintiff underwent ACDF of the C6 and C7 vertebrae and was diagnosed post-operation with a herniated C6–7 intervertebral disc.  Dkt. No. 10-1 at 8.  An x-ray in December 2015 revealed mild degenerative changes to the cervical spine, and Dr. Gulati observed a decreased range of motion in the neck.  Dkt. No. 10-3 at 226; Dkt. No. 10-2 at 1.  In January 2016, the ACDF operating physician noted that Plaintiff's back condition had been improving since surgery.  Dkt. No. 10-1 at 72.

In February 2016, Plaintiff continued to report his average pain in the past week as a 7–8 out of 10.  Dkt. No. 10-1 at 37.  He also reported foot pain in February 2016.  Dkt. No. 10-1 at 139.  Throughout the spring into the summer of 2016, Dr. Dassa continued to observe a restricted range of motion and decreased motor function in Plaintiff's left hand.  *See, e.g.*, Dkt. No. 10-2 at 79, 84, 88.  Records from November 2016 indicate that Plaintiff had been undergoing physical therapy for neck and back pain "without much success."  Dkt. No. 10-1 at 80.  In November 2016, Dr. Dassa observed decreased range of motion in Plaintiff's left hand and significant swelling and weakness.  Dkt. No. 10-2 at 59.  Throughout 2017, Plaintiff continued to report similar symptoms of pain, and repeat examinations revealed ongoing evidence of his diagnosed conditions, as well as decreasing functioning in Plaintiff's hands, legs, and back.  *See, e.g.*, Dkt. No. 10-3 at 347; Dkt. No 10-4 at 246, 1290.  A March 2017 MRI of the right wrist also indicated ganglion cysts and bursitis.  Dkt. No. 10-2 at 42.

In January 2018, Dr. Dassa performed a right carpal tunnel release surgery on Plaintiff.  Dkt. No. 10-4 at 241.  In the following year, Dr. Dassa repeatedly noted reports of pain in both of Plaintiff's wrists.  Dkt. No. 10-4 at 227, 231, 233.  Through the end of 2018, Plaintiff continued to report pain and decreased functioning of his hands, legs, and back.  Dkt. No. 10-4 at 68.  In

January 2019, an MRI showed continued impairments to Plaintiff's back, and the examining physician observed diminished sensation in a "sto[c]king distribution" in the legs, diminished deep tendon reflexes, and unstable gait.  Dkt. No. 10-4 at 167.

## II.   Medical Opinions at Issue

Over the relevant time period, Plaintiff was treated by various physicians, who provided opinions on his condition.

### A.  Dr. Bhanusali's March 12, 2018 Workers' Compensation Examination

Dr. Govindlal Bhanusali, an orthopedist employed by the New York City Law Department, conducted a number of consultative examinations of Plaintiff for the purpose of Workers' Compensation claims related to Plaintiff's 2014 use-of-force injury to his left hand.  Dr. Bhanusali's March 2018 opinion concerned his fifth consultative examination of Plaintiff since Plaintiff's AOD.  Dkt. No. 10-4 at 7.  Dr. Bhanusali opined that Plaintiff could conduct modified work where he is not required to lift more than 15 pounds and is not required to engage in a repetitive range of motion to the left wrist.  *Id.* at 12.  At the time of the examination, Plaintiff was recovering from carpal tunnel release surgery in his right wrist, which informed Dr. Bhanusali's assessment that he could not lift more than 5 pounds with the right hand and could not engage in any repetitive range of motion of the right wrist.  *Id.* at 13.  Since Plaintiff was claiming Workers' Compensation only for the injury to his left hand, Dr. Bhanusali did not opine about Plaintiff's additional injuries from the 2015 accident.

### B.  Dr. Gulati's Opinion

Dr. Rajan Gulati, an internal and family medicine physician, treated Johnson regularly between his AOD and December 26, 2018.  The treatment is documented in over 250 pages of medical records included in the administrative record.  On December 27, 2018, Dr. Gulati prepared

a Physical Medical Source Statement in connection with the administrative proceedings.  Dkt. No. 10-4 at 64–67.  His opinion listed Plaintiff's diagnoses as "carpal tunnel, cervical disc herniation, bilat. lower back pain[,] sciatica, anxiety[,] depression."  Dkt. No. 10-4 at 64.  Dr. Gulati listed Plaintiff's symptoms as "'stress,' [b]ilat foot edema, difficulty walking, back [and] neck pain, bilat hand pain."  *Id.*  Dr. Gulati noted the precipitating factors of Plaintiff's pain to be "standing, sitting for long periods of times."  *Id.*  Dr. Gulati listed the following clinical findings and objective signs: "paraspinal muscle spasm, tenderness lower lumbar area, flexion [and] extension limited[,] cervical flexion [and] extension limited."  *Id.*  Dr. Gulati described Plaintiff's treatment regime as "pain medication[,] pending MRI, physical therapy 3x week."  *Id.*  Dr. Gulati opined that Plaintiff can walk 1–2 city blocks without rest or severe pain, that he could sit and stand/walk for a total of two hours in an eight-hour working day with normal breaks, that he would need to shift positions at will from sitting to standing or walking, that he needs to walk approximately 5 minutes every hour during an 8-hour working day, and that he needs to take an estimated 15-minute-long break during the working day due to "pain/paresthesias, numbness."  Dkt. No. 10-4 at 65.  Dr. Gulati further opined that, if Plaintiff had a sedentary job, his legs would need to be elevated 15% of the day due to his edema.  *Id.*  Dr. Gulati found that Plaintiff can frequently lift and carry 10 pounds or less, occasionally 20 pounds, and never 50 pounds; Dr. Gulati further found that Plaintiff can rarely twist, stoop (bend), crouch/squat, or climb ladders, and that he can occasionally climb stairs. Dkt. No. 10-4 at 66.  Dr. Gulati opined that Plaintiff does not have significant limitations with reaching, handling or fingering.  *Id.*  Dr. Gulati noted that Plaintiff is likely to be off task 25% or more of the workday, he is capable of low-stress work, that he is likely to have "good days" and "bad days" with his condition, and that he would have absences more than four days per month due to his impairments or treatment.  Dkt. No. 10-4 at 67.

### C.  Dr. Dassa's Opinion

Dr. Gabriel Dassa, an orthopedic surgeon, treated Johnson regularly between his AOD and January 16, 2019, and performed four surgeries to Plaintiff's hands over the course of their treatment relationship.   On January 16, 2019, Dr. Dassa prepared a Physical Medical Source Statement in connection with the administrative proceedings.  Dkt. No. 10-4 at 221–24.  Dr. Dassa noted in his report that he had appointments with Plaintiff every 4 to 6 weeks throughout their treatment relationship. Dkt. No. 10-4 at 221.  Dr. Dassa summarized Plaintiff's diagnoses as status post left wrist scope, right carpal tunnel release, right De Quervain's release, and bilateral trigger thumb release.  *Id.*  Dr. Dassa reports Plaintiff's symptoms as "pain, burning, swelling, weakness." *Id.*  Dr. Dassa reports that Plaintiff can walk 4–5 blocks without rest or severe pain and sit and stand/walk about four hours total out of an eight-hour workday.  *Id.*  Dr. Dassa reports that Plaintiff can lift a weight of less than 10 pounds only rarely and can never lift 20 or 50 pounds.  Dkt. No. 10-4 at 223.  Dr. Dassa opined that Plaintiff can never twist, stoop (bend), crouch/squat, climb stairs, and climb ladders.  *Id.*  Dr. Dassa reports that Plaintiff can only use his hands/fingers/arms to grasp, turn, or twist objects; conduct fine manipulations; reach in front of body; and reach overhead 25% of an eight-hour workday.  *Id.*  Dr. Dassa reported that Plaintiff would be off task 25% or more of the workday, that he is incapable of even "low stress" work, that his impairments would produce "good days" and "bad days" and that he would be absent from work more than four days per month due to his impairments and treatments.  Dkt. No. 10-4 at 224.

### D.  Dr. Seok's Opinion

Dr. Seok conducted an initial disability determination on behalf of the Social Security Administration ("SSA") in December 2016.  Dr. Seok based the opinion on limited medical records and a consulting examiner ("CE") report from Industrial Medical Association.  Dkt. No.

10 at 82–83.  Dr. Seok opined that Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk for a total of six hours of an eight-hour workday, and sit for about six hours of an eight-hour workday.  Dkt. No. 10 at 88.  Dr. Seok further concluded that Plaintiff was able to push and/or pull without limits, other than the already noted lift/carry limitations; and climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl "occasionally."  Dkt. No. 10 at 89.  Dr. Seok further found Plaintiff had no manipulative limitations.  *Id.*  Dr. Seok ultimately concluded that Plaintiff "has limitations with lifting and bending due to back pain and neck pain. These limitations result in an RFC of light."  Dkt. No. 10 at 90.

## PROCEDURAL HISTORY

On December 23, 2016, Plaintiff applied for Social Security Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, for a disability allegedly beginning on March 22, 2015.  Dkt. No 10 at 13, 171.  On May 2, 2017, the SSA denied Plaintiff's application, and he responded by timely requesting a hearing before an ALJ.  *Id.* at 95, 107.  ALJ Edward E. Evans held a video hearing on February 2, 2019.  *Id.* at 47–48.  Johnson and his counsel appeared, along with Cynthia Younger, an impartial vocational expert.  *Id.* at 47–50.

In an opinion dated March 22, 2019, ALJ Evans concluded that Johnson had not been under a disability from his AOD through the date of the decision.  *Id.* at 17–29.  The ALJ found that Johnson had not engaged in substantial gainful activity since his AOD and that Johnson had suffered from the severe impairments of obesity, degenerative disc disease with radiculopathy status post cervical fusion, carpal tunnel syndrome post bilateral trigger thumb release, right hip bursitis, and diabetes mellitus with neuropathy.  *Id.* at 19.  The ALJ observed that these "impairments significantly limit the ability to perform basic work activities."  *Id.*  ALJ Evans

nonetheless concluded that the impairments Johnson suffered from did not meet the severity of the listed requirements in 20 CFR Part 404, Subpart P, Appendix 1, and that accordingly Johnson was not per se disabled.  *Id.* at 20–21.

Because Johnson was not per se disabled, the ALJ analyzed the record to determine Johnson's residual functional capacity ("RFC") and whether that RFC would allow Johnson to perform the requirements of his past relevant work as a corrections officer.  The ALJ found that the evidence of Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms.  *Id.*  However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  *Id.*  In making this finding, the ALJ afforded "significant evidentiary weight" to one opinion out of the seven offered in Johnson's records, the March 2018 examination made in connection with a Workers' Compensation claim concerning his 2014 injury to his left hand prior to his AOD.  *Id.* at 25.  ALJ Evans accorded such weight to this opinion due to its "consistency with the record" and because the limitations assessed were "generally reasonable" as they related to the left wrist.  *Id.*  The ALJ accorded "some weight" to the opinion of Dr. Seok, who performed a review of records on behalf of the New York State Disability Determination Service in May 2017.  *Id.* at 26.  ALJ Evans found the limitations offered in this opinion "reasonable and consistent with the record," though he found "additional limitations [were] also warranted," which is why he only gave it some weight.  *Id.*  The ALJ accorded the remaining five opinions little weight.  ALJ Evans accorded little weight to two of these opinions due to the agency's policy against assessing percentage ratings or partial disability findings.  *Id.* at 23–24.  He accorded little weight to an additional opinion given shortly after Plaintiff's 2015 accident that found he could go back to "light duty" because of an asserted

lack of documented medical evidence to support the conclusion and the lack of definition of light work.  *Id.* at 23.

The two remaining opinions came from Plaintiff's treating physicians, Dr. Gulati and Dr. Dassa.  ALJ Evans accorded little weight to Dr. Gulati's opinion because it "simply does not appear to be supported or persuasive" and highlighted contradictions he perceived between the medical evidence and Dr. Gulati's proffered opinion.  *Id.* at 25 (noting limitations on walking and standing are not documented in treatment notes and time off task and absences are "not supported by medical evidence.").  Similarly, ALJ Evans accorded little weight to Dr. Dassa's opinion because he found that the limitations recommended by the opinion were not supported by the objective findings in the record.  *Id.*  He further noted that Dr. Dassa's opinion appeared to address only Johnson's ability to return to his prior work in corrections, not his ability to work in any capacity. *Id.*

> Ultimately, the ALJ found that Johnson had the RFC to perform light work, because:
>
> he can lift 20 pounds occasionally and 10 pounds frequently; can stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks; can sit for about 6 hours out of an 8 hour workday, with normal breaks; and push and/or pull the same weights; except the claimant may not climb ladders, ropes, or scaffolds; may occasionally climb ramps or stairs, reach overhead bilaterally, balance, stoop, kneel, crouch, or crawl; may frequently reach in all other directions bilaterally; may not be exposed to repetitive jarring or bounding; may not constantly or rapidly flex, rotate, or extend the neck; may shift position between sitting and standing as frequently as every half hour without loss of productivity; and may occasionally handle, finger, or feel bilaterally.

*Id.* at 22.

Although the ALJ concluded that Johnson is capable of performing his past relevant work as a corrections officer, the ALJ explained that "[b]ased on the claimant's testimony it appears he cannot perform this work as he actually performed the job."  *Id.* at 27.  Because of this, the ALJ went on to make "alternative findings" concerning additional types of employment Johnson can

engage in given the RFC findings noted above.  *Id.*  ALJ Evans, citing the vocational expert's testimony, listed a number of positions Johnson would qualify for in the job market: school bus monitor; usher; counter clerk, photo finishing; call out operator; and surveillance system monitor. *Id.* at 28.

Plaintiff appealed the ALJ's decision to the SSA Appeals Council.  Dkt. No. 10 at 9.  The Appeals Council denied Plaintiff's request for review on June 24, 2020, and adopted the ALJ's decisions as the final decision of the Commissioner.  *Id.* at 5.

Plaintiff filed suit against Andrew Saul, Commissioner of Social Security, on August 21, 2020[1], seeking judicial review of the Commissioner's final decision.  Dkt. No. 1.  On March 26, 2021, Plaintiff moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. No. 11.  On June 24, 2021, Defendant submitted a cross-motion for judgment on the pleadings pursuant to Rule 12(c).  Dkt. No. 16.

## LEGAL STANDARD

A judgment on the pleadings under Rule 12(c) is appropriate where "the movant establishes that no material issue of fact remains to be resolved" such that a judgment on the merits can be made "merely by considering the contents of the pleadings."  *Guzman v. Astrue*, 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (citing *Juster Assocs. v. City of Rutland*, 901 F.2d 366, 369 (2d Cir. 1990); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).  In reviewing a final decision of the Commissioner, the Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (made applicable through

---

[1] In July 2021, Kilolo Kijakazi replaced Andrew Saul as Acting Commissioner of Social Security and is thus being substituted pursuant to Federal Rule of Civil Procedure 25(d).

42 U.S.C. § 1383(c)(3)).  That is, the Court has discretion to determine whether or not a remand is appropriate in evaluating the ALJ's decision.  *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (quoting § 405(g)); *see Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  The Court may set aside the ALJ's decision where it is based on legal error or is not supported by substantial evidence in the record.  Substantial evidence is "more than a mere scintilla"—it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citations omitted); *see Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (citing *Perales*, 402 U.S. at 401); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (same).  Though this standard is deferential to an ALJ's finding, an ALJ's disability determination must be reversed if it is not supported by substantial evidence or remanded if it contains legal error.  *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (Sotomayor, J.).

## DISCUSSION

Plaintiff argues that the Court should grant Plaintiff's motion for judgment on the pleadings, reverse the ALJ's decision, and issue an order either finding Plaintiff disabled or remanding the matter to the ALJ.  Dkt. No. 12 at 27.  Plaintiff makes two arguments in support of his motion.  First, Plaintiff argues that the ALJ's decision was legally erroneous for failure to observe the "treating physician rule."  Dkt. No. 12 at 15–16.  Second, Plaintiff argues that the ALJ's determinations that Plaintiff's condition did not meet or medically equal a listing under 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 and that Plaintiff has the residual functional capacity to perform light work were not supported by substantial evidence.  *Id.*  Since the Court finds that the ALJ committed legal error in failing to explain the weight it accorded Plaintiff's treating physicians, the Court does not reach the issue of whether sufficient evidence supported

the ALJ's ultimate disability determinations.[2]

Plaintiff argues that the Commissioner committed legal error by failing to accord the proper weight to the opinion from Johnson's treating physicians, Dr. Gulati and Dr. Dassa.  The Second Circuit has stated that, in cases where an application for benefits was submitted before March 27, 2017:

> The SSA recognizes a rule of deference to the medical views of a physician who is engaged in the primary treatment of a claimant. Thus, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (alterations in original) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527(c)(2)).  On the other hand, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam).

When a treating physician's opinion is not given controlling weight, "SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive."  *Greek*, 802 F.3d at 375 (citing 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)–(6)).  In making

---

[2] "[T]he crucial factors in any determination [made by the ALJ] must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence."  *Ferraris*, 728 F.2d at 587.  Furthermore, "[i]t is not the function of a reviewing court to decide de novo whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations. Nor may [the reviewing court] properly affirm an administrative action on grounds different from those considered by the agency."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal citations omitted).  Without a sufficient record explaining the ALJ's reasons for its determinations, the Court is unable to properly review its conclusions and come to a determination regarding whether it was supported by substantial evidence.

this determination, the ALJ must consider "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).  After considering these factors, the ALJ must "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (quoting *Halloran*, 362 F.3d at 33); *see also Greek*, 802 F.3d at 375 (reaffirming these requirements). Indeed, "failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* (citing *Burgess*, 537 F.3d at 129-30; *Snell*, 177 F.3d at 133).

The Circuit has also explained that:

> An ALJ's failure to "explicitly" apply the *Burgess* factors when assigning weight at step two is a procedural error.  If "the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment]," we are unable to conclude that the error was harmless and consequently remand for the ALJ to "comprehensively set forth [its] reasons."  If, however, "a searching review of the record" assures us "that the substance of the treating physician rule was not traversed," we will affirm.

*Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (citing *Selian*, 708 F.3d at 419–20; *Halloran*, 362 F.3d at 32–33).

The ALJ need not recite each *Burgess* factor explicitly if its decision reflects application of the substance of the treating physician rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) ("When an ALJ refuses to give controlling weight to the medical opinion of a treating physician, he/she must consider various 'factors' in deciding how much weight to give the opinion. . . . The Commissioner must also give 'good reasons' for the weight given to the treating source's opinion. Nevertheless, where 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive

or insufficient to lead him to a conclusion of disability.'") (citing 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2); *Halloran*, 362 F.3d at 32; *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998));

*Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Berry v. Schweiker*, 675 F.2d 464, 469

(2d Cir. 1982)).

 Here, the ALJ committed a procedural error when it accorded "little weight" to Dr. Dassa

and Dr. Gulati's opinions. Dkt. No. 10 at 25–26.  The ALJ did not consider, explicitly or

substantively, many of the *Burgess* factors when assigning Dr. Gulati and Dr. Dassa's opinions

"little weight." *Id.*  In its opinion, the ALJ identified Dr. Gulati as "one of the claimant's providers"

but did not otherwise acknowledge the more than three-year treatment relationship between

Plaintiff and Dr. Gulati.  Dkt. No. 10 at 25.  When analyzing Dr. Dassa's proffered opinion, ALJ

Evans did not acknowledge Dr. Dassa's role as a treating physician, that he is an orthopedic

surgeon, that he performed Plaintiff's multiple hand surgeries, or that he had an approximately

three-year-long treatment relationship with Plaintiff.  Although ALJ Evans acknowledged the

remaining *Burgess* factors—whether the medical support for the physicians' conclusions and the

conclusions are consistent with the rest of the record—in the substance of his discussion, he does

not provide "good reasons" for his conclusions.  *Estrella*, 925 F.3d at 96.

 The ALJ also made a number of unsupported conclusions regarding Dr. Gulati's opinion.

First, the ALJ concluded that Dr. Gulati's treatment notes do not support Dr. Gulati's recited

limitations: that Plaintiff is only able to walk one to two blocks and stand/walk for only two hours

total per day, requires unscheduled breaks, and must elevate his legs for 15% of the workday.  Dkt.

No. 10-4 at 65.  Contrary to the ALJ's finding that "mobility problems consistent with limitations

on standing and walking are not documented," there is evidence within Dr. Gulati's opinion itself,

as well as in the supporting medical records provided with the opinion, that support Dr. Gulati's

recommended limitations.  Dkt. No. 10 at 25.  In Dr. Gulati's opinion, he lists Johnson's symptoms as "bilat foot edema, difficulty walking" and reports precipitating factors of Johnson's pain being "standing, sitting for long periods of time."  Dkt. No. 10-4 at 64.  The medical records include various references to periodic extreme swelling in Mr. Johnson's feet, which prevents him from being able to walk; valgus and calcaneovalgus deformities in both feet; and diffuse edema in both feet. *Id.* at 68, 109–10, 118, 126.  Plaintiff's medical records indicate that in December 2017, a physician examined Johnson while he was taking a few steps and found "significant posterior tibial dysfunction and propulsion of the instep of both" the right foot and ankle, which the physician posits could be the cause of the periodic diffuse swelling reported by Johnson. *Id.* at 109.  The consistent reports of swelling and pain throughout the records support Dr. Gulati's conclusions regarding the limitations on walking and standing.

Next, the ALJ concluded that, "while the claimant does have limited motion in the spine, with complaints of pain, there is nothing to support the opinion that the claimant can only 'rarely' engage in such basic activities as twisting and stooping." Dkt. No. 10 at 29 (quoting Dkt. No. 10-4 at 66).  In addition to the numerous references within Dr. Gulati's opinion to Johnson's back pain and motion limitations already described above, Dr. Gulati consistently and repeatedly emphasizes in treatment notes Johnson's varied back pain, cervical disc herniation, and limited ability to extend his back.[3]  The ALJ did not point to any objective evidence contradicting this limitation, nor acknowledge the possibility that reports of pain alone can be sufficient to justify a limitation imposed by a treating physician. *See Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d

---

[3] The ALJ also mischaracterizes Dr. Gulati's opinion regarding Johnson's back pain, sciatica, and lumbar impairment, asserting that "no actual lumbar impairment was indicated" despite Dr. Gulati's descriptions of Plaintiff's cervical disc herniation, lower back pain, sciatica, and limited flexion and extension.  Dkt. No. 10 at 29; Dkt. No. 10-4 at 64.

Cir. 2003) ("The fact that [a treating physician] relied on [the patient's] subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool."); *Donato v. Sec. of Dep't of Health and Human Servs.*, 721 F.2d 414, 418–19 (2d Cir. 1983) ("Subjective pain may serve as the basis for establishing disability, even if . . . unaccompanied by positive clinical findings of other objective medical evidence.").

Finally, the ALJ found that "[o]ther significant limitations, including time off task and absences, are also indicated, but these are not supported by medical evidence." Dkt. No. 10 at 29. This broad conclusion made by the ALJ, which was made in the face of significant medical evidence of pain, limited movement in Johnson's back, and the need to adjust positions relatively frequently, is not explained. At the hearing, the vocational expert conceded that if the ALJ were to accept Dr. Gulati's opinion that Plaintiff would be off task 25% or more of the workday and that he would sustain absences of four or more days per month due to his impairments or treatment it would preclude Plaintiff from eligibility for any work on the job market. Given the determinative nature of these limitations, the ALJ is under a duty to "adequately explain his reasoning in making the findings on which his ultimate decision rests." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (summary order); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) ("[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence."). This barebones, conclusory statement does not satisfy that obligation. The ALJ's conclusion that Dr. Gulati's "opinion simply does not appear to be supported or persuasive," without offering "good reasons" for such a conclusion, constitutes legal error justifying remand. Dkt. No. 10 at 25; *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

The ALJ also committed error in the treatment of Dr. Dassa's opinion.  The ALJ stated that Dr. Dassa's opinion was inconsistent with Dr. Gulati's opinion in that it "indicate[s] somewhat greater function in some areas . . . but also far less functioning overall."  Dkt. No. 10 at 25.  The ALJ did not note the differences in the treatment relationship of the two doctors with Plaintiff; namely that Dr. Dassa performed surgery on Plaintiff's hands whereas Dr. Gulati examined and evaluated all of Plaintiff's injuries as a general practitioner.  The ALJ found that Dr. Dassa's conclusion that Johnson is completely unable to work is "far in excess of objective findings."  *Id.* He continued that, while Johnson's "allegations of pain are sufficient to limit his ability to work, the extreme limitations alleged at times are far in excess of the pain that might be expected given his objective findings."  *Id.* at 26.  The ALJ did not note any objective findings that contradict the level of limitations found, or offer any other opinion that contradicts such limitations.  Dr. Dassa performed four surgeries on Plaintiff's hands in the three years of treatment, and Plaintiff was still experiencing significant enough pain that, even while taking pain medication, Plaintiff and Dr. Dassa discussed on multiple occasions whether he should be given a cortisone injection as well. *See, e.g.*, Dkt. No. 10-4 at 225–26, 229–30.

The ALJ justified its assignment of "little weight" to Dr. Dassa's opinion by noting that "the chasm between subjective claims and objective findings suggests his allegations are not entirely reliable," but it does not explain how it came to that conclusion, or whether the ALJ's conclusion is supported by another opinion or contradictory objective findings.  Dkt. No. 10 at 26. The ALJ further concluded that Dr. Dassa only considered Plaintiff's ability to return to work as a corrections officer in his assessment of his ability to return to work, although an additional note by Dr. Dassa reported Plaintiff's general inability to return to work given his extensive limitations. Dkt. No. 10-4 at 230.  Regardless, the vocational expert testified that the objective factors Dr.

Dassa's opinion describes would preclude Plaintiff from all work.  Dkt. No. 10 at 72–76.  Such a conclusion unjustified by an adequate explanation providing "good reasons" for how the ALJ came to the determination to give little weight to a long-time treating physician, constitutes legal error and warrants remand.  *Ferraris*, 728 F.2d at 587; *Snell*, 177 F.3d at 133.

Although the ALJ did not directly compare any medical evidence to the opinions of Dr. Gulati and Dr. Dassa, the ALJ's decision did discuss seven other medical opinions and assigned more than little weight to two opinions, both from practitioners who formed opinions regarding Plaintiff's injuries in a consultative capacity.   Dkt. No. 10 at 25, 26.  The Second Circuit has "frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'"  *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)).  Beyond concluding that these examinations were "consistent with the record," the ALJ did not describe how they were consistent or what specific portions of the opinions aligned with the record.  Dkt. No. 10 at 25, 26.

The March 2018 examination by Dr. Bhanusali, the only opinion given "significant weight," was not an examination concerning all of Plaintiff's injuries, but a consultative exam of his use-of-force injury to his left hand, which occurred before his AOD, for the purposes of Workers' Compensation.  Although Dr. Bhanusali had conducted multiple examinations of Plaintiff between 2015 and 2018, these were for the consultative purpose of Workers' Compensation assessments, not for treatment, and were limited to one injury out of many.  The ALJ used the March 2018 examination results to make his own conclusions about the total weight Plaintiff should be able to carry, asserting that it is "somewhat greater" given that his right hand would be able to carry more after recovery from his recent surgery on his right wrist at the time of the examination.  Dkt. No. 10 at 25.  ALJ Evans did not base this conclusion on any medical

records or other medical opinions but instead on his own reasoning extrapolated from this examination. This is not permitted. *See Rosa*, 168 F.3d at 78–79 ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

Dr. Seok, who did not examine Plaintiff but reviewed Plaintiff's records in a consultative capacity on behalf of the State Disability Determination Service in May 2017, provided an opinion that the ALJ accorded "some weight" due to it being "consistent with the record." Dkt. No. 10 at 26. On the contrary, it appears this opinion is inconsistent with the record before the ALJ in a number of ways. First, the symptoms evaluation listed "pain" as the sole symptom. Dkt. No. 10 at 87. Dr. Seok found Plaintiff's allegations of impairment to be only "partially consistent" with the evidence due to his "ADLs" (activities of daily living). *Id.* Dr. Seok's assessment then reads, "[a]fter considering the evidence of record, this determination finds that the claimant's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally not consistent with the evidence of record." *Id.* At the time Dr. Seok conducted this review of records, neither Dr. Dassa nor Dr. Gulati had issued an opinion, nor did Dr. Seok have the benefit of reviewing any of Plaintiff's medical records from either of his long-term treating physicians. Even though the ALJ provided this opinion "some weight," he noted within the same paragraph that he believed further limitations were warranted beyond those recommended by Dr. Seok, which would imply some inconsistency between this opinion and the rest of the record that is not expanded upon by the ALJ. *Id.* at 26.

These two consultative opinions were not "sufficiently substantial to undermine the opinion of the treating physician[s]." *Burgess*, 537 F.3d at 128. The ALJ gave no other medical opinions more than little weight, nor did it provide any other "good reasons" to justify its

conclusions concerning Plaintiff's treating physicians. *Estrella*, 925 F.3d at 96. By doing so, the ALJ traversed the substance of the treating physician rule, requiring remand. *Id.* at 98.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED as provided by this opinion and Defendant's cross-motion for judgment on the pleadings is DENIED, and the matter is REMANDED to the Commissioner for further proceedings consistent with this opinion. The Clerk of Court is respectfully directed to close Dkt. Nos. 11, 15, [4] and 16.


SO ORDERED.

Dated: November 1, 2021
       New York, New York

_____
             LEWIS J. LIMAN
         United States District Judge

---

[4] Dkt. No. 15 appears to be a filing made in error.